## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RODNEY WILDS,**

    *Plaintiff,*

       v.

**COHO FINANCIAL d/b/a PATH LENDING, CLARITY SERVICES, INC., THUNDERBIRD SERVICES, LLC and DENNIS GLEN MILKS,**

    *Defendants.*

Case Number: 8:24-cv-02803

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, RODNEY WILDS ("Mr. Wilds"), by and through his undersigned counsel, Seraph Legal, P.A., and complains of the Defendants, COHO FINANCIAL D/B/A PATH LENDING ("Path Lending"), THUNDERBIRD SERVICES, LLC ("Thunderbird"), CLARITY SERVICES, INC. ("Clarity"), and DENNIS GLEN MILKS ("Milks") (collectively, the "Defendants"), and in furtherance thereof states as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Mr. Wilds against Path Lending for violations of the *Florida Consumer Collection Practices Act*, section 559.55, *Florida Statutes, et seq.* ("FCCPA"); against all the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act,* 18 U.S.C. § 1961, *et seq.* ("RICO"); and

against all the Defendants for violations of the Florida's *Civil Remedies for Criminal Practices Act*, section 772.101, *Florida Statutes*, *et seq.* ("CRCPA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Mr. Wilds' federal claims arises under 18 U.S.C. § 1965 (RICO) and 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction for Mr. Wilds' state law claims under the FCCPA and CRCPA pursuant to 28 U.S.C. § 1367.

4.      The Defendants are subject to this Court's jurisdiction pursuant to section 48.193, *Florida Statutes* and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants committed and/or caused the acts of which the Mr. Wilds complains within the Middle District of Florida.

## PARTIES

### Mr. Wilds

6.      Mr. Wilds is a natural person over the age of eighteen (18) residing in the City of St. Petersburg, Pinellas County, Florida, and is *sui juris*.

7.      Mr. Wilds is a *Consumer* as defined by the FCCPA, section 559.55(8), *Florida Statutes*.

## Path Lending

8.      Path Lending is an online lender that offers loans to consumers at annual percentage rates over six hundred (600%) percent via its website, www.pathlending.com.

9.      Path Lending purports to be chartered pursuant to the laws of the Guidiville Indian Rancheria (the "Tribe"), a federally recognized American Indian nation.

10.     Path Lending also claims to be a wholly owned economic arm and instrumentality of the Tribe.

11.     Path Lending can be served at 621 Medicine Way, Suite 1, Ukiah, CA 95482.

## Clarity

12.     Clarity is a Delaware corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

13.     Clarity is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

## Thunderbird

14.     Thunderbird is a Delaware corporation with a primary address of 2301 Burlington St., Suite 270, Kansas City, MO 64116.

15.     The registered agent for Thunderbird in Delaware is Delaware and Yacht Registry, Ltd., 108 W. 113th St., Suite 105, Wilmington, DE 19801.

## Milks

16.     Milks is the owner of Thunderbird, and a natural person who, upon information and belief, resides at 7615 N. Donnelly Ave., Kansas City, MO 64158.

## FACTUAL ALLEGATIONS

### Path Lending Makes an Unlawful Loan to Mr. Wilds

17.     On or about March 9, 2020, Path Lending made a loan to Mr. Wilds for six hundred ($600) dollars (the "Loan").

18.     The Loan charged Mr. Wilds an interest rate that exceeded six hundred (600%) percent per year.

19.     Mr. Wilds obtained the Loan through www.PathLending.com from his home in Florida.

20.     Path Lending transferred the Loan proceeds through the Automated Clearing House ("ACH") network into Mr. Wilds' checking account, which Mr. Wilds maintained in Florida.

21.     Shortly after Mr. Wilds took out the Loan, Path Lending began debiting Mr. Wilds' checking account via the ACH network and withdrawing bi-weekly payments.

22.     Despite repaying more than six hundred ($600) dollars, Path Lending alleged that Mr. Wilds owed an additional one-thousand-two-hundred-and-ninety-five ($1,295) dollars by June of 2020.

23.     The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

24.     Section 687.02(1), *Florida Statutes*, renders any loan made with an interest rate greater than eighteen (18%) percent per year usurious.

25.     Section 687.071(3), *Florida Statutes*, renders loans with annual interest rates greater than forty-five (45%) percent a third-degree felony.

26.     Section 687.071(7), *Florida Statutes* renders any criminally usurious loan void and unenforceable.

27.     Long-standing Florida public policy confirms the impossibility of the alleged debts. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.").

28.     Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Richter Jewelry Co.*, 169 So. at 752.

29.     Indeed, even the recovery of the principal balance of loans made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. 1st DCA 1988).

30.     The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 4 So. 2d 519 (Fla. 1941); *see also Pushee v. Johnson*, 166 So. 847 (Fla. 1936); *River Hills, Inc. v. Edwards*, 190 So. 2d 415 (Fla. 2d DCA 1966).

31.     Florida has taken usury one step further in the consumer loan context through its passage of the Consumer Finance Act, Chapter 516, *Florida Statutes* (the "Act").

32.     The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of twenty-five-thousand ($25,000) dollars or less. § 516.02(1), Fla. Stat.

33.     The Act further restricts the interest and fees a licensed consumer finance company may charge.

34.     Section 516.02(c), *Florida Statutes*, provides that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

35.     Florida has made it abundantly clear that to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Act.

36.    Mr. Wilds' Loan charged an annual interest rate that vastly exceeded the rate the Act permits.

37.    Path Lending is not licensed as a Consumer Finance Company in Florida.

38.    Therefore, the Loan is unenforceable against Mr. Wilds, regardless of whether it was valid under tribal law or wherever else it might have been made.

*39.*    Further, because the Loan was subject to annual interest rates greater than forty-five (45%) percent, which exceeds the limit prescribed in section 678.071(3), *Florida Statutes*, the balance of the Loan is void *ab initio* and unenforceable in Florida, pursuant to section 687.071(7), *Florida Statutes*.

40.    The Loan balance is therefore an *Unlawful Debt* pursuant to section 772.102(2)(a)(3), *Florida Statutes* and 18 U.S.C. § 1961(6).

41.    Mr. Wilds used the proceeds from the Loan for the purchase of goods and services for personal, family, or household purposes, therefore the Loan meets the definition of *Debt* under the FCCPA, section 559.55(6), *Florida Statutes*.

42.    Path Lending has made collection communications to Mr. Wilds via e-mail and text message over the past twenty-four (24) months.

43.    Path Lending reported the Loan balance to Clarity, a nationwide consumer credit reporting agency ("CRA"), either directly or via service providers.

**Rent-A-Tribe Schemes**

44.    Path Lending is a purported tribal lending entity owned and operated by the Guidiville Indian Rancheria Tribe (the "Tribe").

45.    Path Lending issues short-term, high-interest-rate loans via its website, www.pathlending.com.

46.    In fact, the Tribe has little to do with operating the lending business and simply participates in what is often referred to as a "rent-a-tribe" scheme.

47.    Pursuant to such a scheme, non-tribal payday lenders attempt to circumvent state usury laws by invoking the sovereign immunity available to Native American tribes and by invoking tribal law.

48.    While the non-tribal entities operate all substantive aspects of the business including funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections for the high-interest loans, the Tribe acts as a label or figurehead in exchange for a relatively insignificant portion of the revenue.

49.    The Tribe is a remote, isolated Native American tribe with approximately one hundred (100) members living on a reservation totaling less than fifty (50) acres near Ukiah, California.

50.    The Tribe was federally recognized in 1992 and has no significant assets such as casinos, gas, or oil.

51.     Facing limited economic prospects, the Tribe attempted to profit by utilizing one of its few assets – "renting" its sovereign immunity to lending entities seeking to "partner" with tribes to avoid state usury laws.

52.     Around 2010, it published a "Tribal Lending Regulatory Ordinance" which was written for the Tribe by outside attorneys representing the interests of online payday lenders seeking to "partner" with the Tribe to engage in "rent-a-tribe" lending schemes.

53.     Allegedly, Path Lending operates under a lending license granted by the Tribe, beholden only to the Tribe's own "Tribal Lending Regulatory Ordinance."

54.     Notably, the Tribe's lending ordinance does not require a person obtaining a license to be a Tribal member, nor does it require the Tribe to retain any percentage of revenue.

55.     The Tribe engaged in its initial "rent-a-tribe" scheme with Charles Hallinan ("Hallinan"), a Pennsylvania businessman the press often refers to as the "Godfather of Payday Lending" because he has participated in the business since the early 1990s.

56.     The Tribe has served as the sham owner of lending businesses such as Hamilton Liberty, Tribal Consumer Lending, and www.BestChoice123.com.

57.     Hallinan managed a scheme in which the Tribe claimed to be the owner of several different payday lending enterprises, but Hallinan's non-tribal businesses actually ran them.

58.     Federal prosecutors later alleged Hallinan amassed $3 million per month from these schemes, with the Tribe's share amounting to tens of thousands of dollars per month.

59.     Hallinan created the false perception that loans originated on the Tribe's reservation by placing an empty cargo container on the Tribe's land, telling the Tribe the server ran software which approved loan applications.

60.     However, the server was merely an empty box that was not connected to the internet.

61.     In 2016, Hallinan was arrested and charged with racketeering, mail fraud, wire fraud, money laundering, aiding and abetting, and other crimes which directly related to his payday lending empire and lending business the Tribe supposedly owned.

62.     Hallinan is currently incarcerated in federal prison, serving a 16-year sentence since his 2017 conviction in which he also received a $64 million fine.

63.     Online tribal lending is considered "off-reservation" conduct. *Hengle v. Treppa*, 19 F.4th 324, 348-49 (4th Cir. 2021).

64.   Unsurprisingly, virtually none of Path Lending's business is conducted on the Tribe's reservation.

65.   Rather, all essential business operations are performed in other locations outside of the Tribe's jurisdiction.

66.   The www.Pathlending.com website operates from an IP address of 75.8.211.19, which corresponds to a physical location near Walnut Creek, California, near San Francisco and more than one-hundred-and-thirty (130) miles from the Tribe's reservation.

67.   Off-reservation business operations, compromising substantially all the company's functions, are conducted by and for the benefit of non-tribal members and investors.

68.   These operations include incoming and outgoing phone calls and emails, review of loan applications, loan underwriting, payment processing, website maintenance, and marketing.

69.   Mr. Wilds has never set foot on Tribal land or visited Ukiah, California.

70.   As with practically all consumers who obtain a loan from Path Lending, Mr. Wilds did so from his home, which was in Florida.

71.   Mr. Wilds took out the loan from his home in Florida, had the proceeds wired to his checking account that he maintains in Florida, signed all

relevant documents in Florida, received loan communications in Florida, and had payments debited from his checking account at a Florida bank.

72.    Mr. Wilds' Path Lending Loan, having no nexus with the Tribe or its land, and having been obtained, funded, and paid for in Florida, is governed by Florida law.

73.    Accordingly, the loans Path Lending Loan made to Mr. Wilds were criminally usurious, void, unenforceable, and constitute unlawful debt.

**Thunderbird's Role in Path Lending's Racketeering Conspiracy**

74.    According to its profile on LinkedIn, Thunderbird "provides consulting services to Native American Indian Tribes in the areas of Accounting, Information Technology, Operations Management and Federal Consumer Lending Compliance."[1]

75.    Archived Domain Name Registration records establish that on or about April 8, 2012, www.PathLending.com was registered to Dennis Milks of Paycrom Holdings, Ltd.

76.    Paycrom Holdings, Ltd. is a shell company purportedly based in the Isle of Man, United Kingdom.

---

[1] https://www.linkedin.com/company/tbirdsvcs?trk=public_profile_topcard-current-company, accessed July 15, 2024.

77.     Previously, Milks was a senior technology advisor at Evergreen Capital Partners, one of the plethora of businesses Scott Tucker ("Tucker") operated in Kansas City.

78.     Tucker's companies issued loans to over 4.5 million Americans at interest rates typically exceeding seven hundred (700%) percent per year and collected over $3.5 billion in revenue through numerous rent-a-tribe schemes.[2]

79.     Milks later incorporated Thunderbird, also based in Kansas City, one of several non-tribal entities which beneficially operate Path Lending and receive most of Path Lending's profits.

80.     Despite having less than one hundred (100) members living on its reservation, the Tribe claims to operate multiple successful lending enterprises, including "The Loansmith," "Tan Oak Lending," and "Elevation Loans."

81.     All these lending operations are "rent-a-tribe" schemes, e.g., "The Loansmith" operates from www.Loansmith.com and non-tribal persons and entities manage it, including Bart Miller and Centrinex, LLC, a company based near Kansas City that provides services to multiple online payday lenders.

---

[2] In October 0f 2017, Tucker was convicted of racketeering and sentenced to 16 years and 8 months in a federal prison where he is currently incarcerated.

## **Clarity Knowingly Facilitates Loansharking**

82. Clarity is a nationwide CRA which primarily services online payday lenders like Path Lending, i.e., lenders making short-term, small-dollar loans at triple-digit interest rates.

83. Clarity maintains terabytes of proprietary data specifically tailored to assist online, subprime lenders in evaluating potential borrowers, including consumers' checking account histories, employment and salary data, and past payday loan experiences.

84. Clarity then supplements this data with information from its parent company, Experian, one of the "Big 3" nationwide CRAs, along with data from other specialty CRAs including Chex Systems.

85. Clarity merges its own data with data Experian and Chex Systems obtain into one report, which Clarity then sells to online lenders.

86. Prior to Path Lending making a loan to Mr. Wilds, Clarity first sold a consumer report regarding Mr. Wilds to Path Lending.

87. Non-tribal service providers acting on the Path Lending enterprise's behalf, including Thunderbird, obtained Clarity's consumer reports regarding Mr. Wilds.

88.    Clarity has extensive policies to conduct due diligence on potential new customers, which in many cases include sending an investigator to the lender's primary business office.

89.    In situations where a lender is "tribally" owned but obtains consumer reports through a non-tribal service provider, Clarity typically sends its investigator to the service provider's offices, e.g., to Thunderbird's offices in Kansas City and not to the Tribe's reservation in California (which has no lending offices).

90.    Clarity also examines the states in which the lender conducts business and the lender's website, including pages which show the interest rates, terms, and fees.

91.    Numerous consumers have filed lawsuits against Clarity regarding its supplying of credit reports to online payday lenders like Path Lending with sham tribal affiliation.

92.    Clarity also produced detailed reports for the online lending industry, including its 2019 *Alternative Financial Services Lending Trends Insights into the Industry and its Consumers*, which ostensibly analyzed 350 million loan applications and twenty-five million loans, many of which involved short term, small-dollar loans from online lenders.

93.     When it provided a consumer report regarding Mr. Wilds to Path Lending, Clarity knew the data it furnished involved a loan with a triple-digit interest rate.

94.     Absent the trove of data Clarity knowingly supplied to Path Lending, Path Lending would not have made any such loan to Mr. Wilds.

95.     Beyond this, Clarity accepts tradeline data from Path Lending, including loan amounts, payments due, and payment history.

96.     Path Lending reported Mr. Wilds' Loan to Clarity via Thunderbird or other non-tribal service provider.

97.     Clarity seemingly spends hundreds of thousands of dollars each year promoting its services directly to online lenders like Path Lending.

98.     An example of such promotion includes Clarity's "Gold Level" sponsorship of the 2022 and 2023 Online Lenders Alliance Tribal Lending Conference.

99.     Paul Mitchell, Clarity's Senior Account Executive, was a speaker at the conference and provided insight about the type of consumer most likely to look for "tribal" payday lenders and accept their terms.

100.    Clarity also periodically receives disputes from consumers about Path Lending's tradeline data, who allege the loans are usurious and unenforceable.

101.    For years, courts have recognized credit reporting's power to procure payment. A creditor's "ability to report on the credit habits of its customers is [sic] powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

102.    Mr. Wilds made considerable payments to Path Lending for the null, void, and unenforceable loan it provided him with triple-digit interest rates.

103.    Mr. Wilds was damaged by paying one or more of the Defendants for a loan that was void and criminally usurious pursuant to Florida law.

104.    Mr. Wilds has hired the undersigned law firm to represent him in this matter and has assigned it his right to collect fees and costs.

### COUNT I
### <u>VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.</u>
### Path Lending, Thunderbird

105.    Mr. Wilds adopts and incorporates Paragraphs 1 – 104 as if fully restated herein.

106.    Path Lending and Thunderbird violated section 559.72(9), *Florida Statutes* when they attempted to collect, and did in fact collect, the Loan Path Lending made to Mr. Wilds, thereby asserting their legal right to collect said Loan.

107.    The Loan was illegitimate and unenforceable due to the loan's annual interest rate exceeding seven hundred (700%) percent per year in violation of section 687.071, *Florida Statutes*.

108.   The Defendants knew, or should have known, the Loan was unenforceable in Florida.

109.   Path Lending and Thunderbird's actions were willful, intentional, and performed with the express purpose of collecting an unenforceable debt from Mr. Wilds and profiting therefrom.

110.   Path Lending and Thunderbird both knew of the Loan's illegal nature, as they went to great lengths to avoid Florida law through their use of a "rent-a-tribe" scheme.

**WHEREFORE**, Mr. Wilds respectfully requests this Honorable Court enter judgment against Path Lending and Thunderbird, jointly and severally, ordering:

a. Statutory damages of $1,000.00 pursuant to section 559.77(2), *Florida Statutes*;

b. Actual damages pursuant to section 559.77(2), *Florida Statutes*;

c. Injunctive relief preventing the Defendants from attempting to collect the alleged loan balance from Mr. Wilds pursuant to section 559.77(2), *Florida Statutes*;

d. Reasonable costs and attorneys' fees pursuant to section 559.77(2), *Florida Statutes*; and,

e. Such further relief this Court deems just and proper.

## COUNT II
## <u>VIOLATIONS OF RICO, 18 U.S.C. § 1962(c)</u>

111.    Mr. Wilds adopts and incorporates Paragraphs 1 – 104 as if fully restated herein.

112.    Through their participation in the Path Lending Loans scheme, along with the Tribe, the Defendants constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4).

113.    The Loan charged an interest rate that exceeded Florida's maximum permitted rate, rendering the Loan an *Unlawful Debt* pursuant to 18 U.S.C. § 1961(6).

114.    The Defendants each associated with the enterprise and participated in the enterprise's affairs, which existed for the sole purpose of collecting unlawful debt.

115.    The Defendants' participation in the enterprise violated 18 U.S.C § 1962(c) and caused Mr. Wilds to repay a portion of the unlawful Loan.

**WHEREFORE**, Mr. Wilds respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.    Threefold the amount of Mr. Wild's actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and

c.     Any further relief this Court deems equitable and proper.

## COUNT III
## VIOLATIONS OF RICO, 18 U.S.C § 1962(d)

116.   Mr. Wilds adopts and incorporates Paragraphs 1 – 104 as if fully restated herein.

117.   Through their participation in the Path Lending Loans scheme, along with the Tribe, the Defendants constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4).

118.   The Loan charged an interest rate that exceeded Florida's maximum permitted rate, rendering the Loan an *Unlawful Debt* pursuant to 18 U.S.C. § 1961(6).

119.   The Defendants violated 18 U.S.C § 1962(d) by conspiring with each other, and with other entities and individuals, to issue and collect unlawful debts via Path Lending.

120.   The Defendants were each aware of the enterprise's goals, and each took actions in furtherance of this conspiracy.

121.   In furtherance of the conspiracy, one or more of the Defendants have: (a) issued the Loan to Mr. Wilds; (b) obtained consumer credit reports regarding Mr. Wilds; (c) sold consumer credit reports regarding Mr. Wilds to assist with review of his loan application; (d) initiated ACH deposits and withdrawals to and

from Mr. Wilds' bank account; (e) collected loan payments and usurious interest from Mr. Wilds; (f) reported Mr. Wilds' Loan to Clarity; and, (g) incorporated tradeline data regarding the Loan in reports they sold regarding Mr. Wilds.

122.    The Defendants each agreed to participate in the conspiracy and the conspiracy's overall objective to collect unlawful loans through Path Lending.

**WHEREFORE**, Mr. Wilds respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.    Threefold the amount of Mr. Wilds' actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c); and

c.    Any further relief this Court deems equitable and proper.

**COUNT IV**
**VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.**

123.    Mr. Wilds adopts and incorporates Paragraphs 1 – 104 as if fully restated herein.

124.    Through their participation in the Path Lending Loans scheme, along with the Tribe, the Defendants constitute an *Enterprise* under the CRCPA, section 772.102(3), *Florida Statutes*.

125.   The Loan charged an interest rate that exceeded Florida's maximum permitted rate per section 687.071(3), *Florida Statutes*, rendering the Loan an *Unlawful Debt* pursuant to section 772.102(2)(a)(3), *Florida Statutes*.

126.   The Defendants each associated with the enterprise and participated in the enterprise's affairs, which existed for the sole purpose of collecting unlawful debt.

127.   Path Lending, Thunderbird, and Milks operated www.PathLending.com.

128.   Clarity provided the consumer data necessary for www.PathLending.com's operation.

129.   The Defendants' participation in the enterprise violated section 772.103(3), *Florida Statutes* and caused Mr. Wilds to repay a portion of the unlawful Loan from Path Lending.

**WHEREFORE**, Mr. Wilds respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.   Threefold the amount of Mr. Wilds' actual damages or, in the alternative, the statutory minimum of $200, whichever is greater, pursuant to section 772.104(1), *Florida Statutes*;

b.   Reasonable costs and attorneys' fees pursuant to section 772.104(1), *Florida Statutes*; and,

c.      Any other relief this Court deems equitable and proper.

**COUNT V**
**VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.**

130.    Mr. Wilds adopts and incorporates Paragraphs 1 – 104 as if fully restated herein.

131.    Through their participation in the Path Lending Loans scheme, along with the Tribe, the Defendants constitute an *Enterprise* under the CRCPA, section 772.102(3), *Florida Statutes*.

132.    Path Lending, Thunderbird, and Milks perform essential functions for the operation of www.PathLending.com.

133.    Clarity has an ongoing business relationship with Path Lending whereby it provides Path Lending with the underlying data necessary for Path Lending to evaluate potential borrowers for Path Lending's high-interest rate loans.

134.    Clarity then publishes information about these loans' payment history in the credit reports it sells.

135.    The Loan charged an interest rate that exceeded Florida's maximum permitted rate per section 687.071(3), *Florida Statutes*, rendering the Loan an *Unlawful Debt* pursuant to section 772.102(2)(a)(3), *Florida Statutes*.

136. The Defendants violated section 772.103(4), *Florida Statutes* by conspiring with each other, and other entities and individuals, to issue and collect unlawful debts through Path Lending.

137. The Defendants were each aware of the enterprise's goals, and each took actions in furtherance of this conspiracy.

138. In furtherance of the conspiracy, one or more of the Defendants have: (a) issued the Loan to Mr. Wilds; (b) obtained consumer credit reports regarding Mr. Wilds; (c) sold consumer credit reports regarding Mr. Wilds to assist with review of his loan application; (d) initiated ACH deposits and withdrawals to and from Mr. Wilds' bank account; (e) collected loan payments and usurious interest from Mr. Wilds; (f) reported Mr. Wilds' Loan to Clarity; and, (g) incorporated tradeline data regarding the Loan in reports they sold regarding Mr. Wilds.

139. The Defendants each agreed to participate in the conspiracy and the conspiracy's overall objective to collect unlawful loans through Path Lending.

**WHEREFORE**, Mr. Wilds respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a. Threefold the amount of Mr. Wilds' actual damages, or in the alternative, the statutory minimum of $200, whichever is greater, pursuant to section 772.104(1), *Florida Statutes*;

b.    Reasonable costs and attorneys' fees pursuant to section 772.104(1),

*Florida Statutes*; and,

c.    Any further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Wilds hereby demands a jury trial on all issues so triable.

Respectfully submitted this December 4, 2024 by:

**SERAPH LEGAL, P.A.**

*/s/ Megan A. Rosenberg*
Megan A. Rosenberg, Esq.
Florida Bar No.: 1005213
mrosenberg@seraphlegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 404)
Fax: 855-500-0705
*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
2124 W. Kennedy Blvd Ste. A
Tampa, Florida 33605
Tel: 813-567-1230 (Ext: 302)
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*